# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM MARIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CHANGE HEALTHCARE, INC., NEIL E. DE CRESCENZO, HOWARD L. LANCE, NELLA DOMENICI, NICHOLAS L. KUHAR, DIANA MCKENZIE, BANSI NAGJI, PHILIP M. PEAD, PHILLIP W. ROE, NEIL P. SIMPKINS, and ROBERT J. ZOLLARS,<br><br>　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Abraham Marin ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Change Healthcare, Inc. ("Change" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and

postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Change and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Change and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to UnitedHealth Group Incorporated ("UnitedHealth") through its subsidiary, Cambridge Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On January 5, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with UnitedHealth. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $25.75 in cash per share of Change owned (the "Merger Consideration").

3. On March 5, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Change and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Change shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.  This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.  Plaintiff is, and has been at all times relevant hereto, the owner of Change shares.

9.  Defendant Change is incorporated under the laws of Delaware and has its principal executive offices located at 424 Church Street, Suite 1400, Nashville, Tennessee 37219. The Company's common stock trades on the NASDAQ under the symbol "CHNG."

10. Defendant Neil E. de Crescenzo ("de Crescenzo") is and has been the Chief Executive Officer and a director of Change at all times during the relevant time period.

11. Defendant Howard L. Lance ("Lance") is and has been a director of Change at all times during the relevant time period.

12. Defendant Nella Domenici ("Domenici") is and has been a director of Change at all times during the relevant time period.

13. Defendant Nicholas L. Kuhar ("Kuhar") is and has been a director of Change at all times during the relevant time period.

14. Defnedant Diana McKenzie ("McKenzie") is and has been a director of Change at all times during the relevant time period.

15. Defendant Bansi Nagji ("Nagji") is and has been a director of Change at all times during the relevant time period.

16. Defendant Philip M. Pead ("Pead") is and has been a director of Change at all times during the relevant time period.

17. Defendant Phillip W. Roe ("Roe") is and has been a director of Change at all times during the relevant time period.

18. Defendant Neil P. Simpkins ("Simpkins") is and has been a director of Change at all times during the relevant time period.

19. Defendant Robert J. Zollars ("Zollars") is and has been a director of Change at all times during the relevant time period.

20. Defendants de Crescenzo, Lance, Domenici, Kuhar, McKenzie, Nagji, Pead, Roe, Simpkins, and Zollars are collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants, along with Defendant Change, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Change is a leading healthcare technology platform that provides data and analytics-driven solutions to improve clinical, financial, administrative, and patient engagement outcomes in the U.S. healthcare system. The Company offers a comprehensive suite of software, analytics, technology-enabled services and network solutions that drive improved results in the complex workflows of healthcare system payers and providers. Change's solutions are designed to improve clinical decision making, simplify billing, collection and payment processes, and enable a better patient experience.

### The Company Announces the Proposed Transaction

23.     On January 6, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> EDEN PRAIRIE, Minn. & NASHVILLE, Tenn.--(BUSINESS WIRE)--Jan. 6, 2021-- Optum, a diversified health services company and part of UnitedHealth Group (NYSE: UNH), and Change Healthcare (NASDAQ: CHNG), a health care technology leader, have agreed to combine. Change Healthcare will join with OptumInsight to provide software and data analytics, technology-enabled services and research, advisory and revenue cycle management offerings to help make health care work better for everyone.
>
> This combination unites two technology and service companies focused on serving health care. Their combined capabilities will more effectively connect and simplify core clinical, administrative and payment processes - resulting in better health outcomes and experiences for everyone, at lower cost. Change Healthcare brings key technologies, connections and advanced clinical decision, administrative and financial support capabilities, enabling better workflow and transactional connectivity across the health care system. Optum brings modern analytics, comprehensive clinical expertise, innovative technologies and extensive experience in improving operational and clinical performance.
>
> "Together we will help streamline and inform the vital clinical, administrative and payment processes on which health care providers and payers depend to serve patients," said Andrew Witty, President of UnitedHealth Group and CEO of

Optum. "We're thrilled to welcome Change Healthcare's highly skilled team to create a better future for health care."

"This opportunity is about advancing connectivity and accelerating innovations and efficiencies essential to a simpler, more intelligent and adaptive health system. We share with Optum a common mission and values and importantly, a sense of urgency to provide our customers and those they serve with the more robust capacities this union makes possible," said Neil de Crescenzo, President and CEO of Change Healthcare. Upon closing, Mr. de Crescenzo will serve as OptumInsight's chief executive officer, leading the combined organization.

*   *   *

"Change Healthcare has made significant progress executing its strategic objectives, including advancing innovation, accelerating growth and improving the effectiveness of the U.S. health system," said Howard Lance, Chairman of the Board of Directors of Change Healthcare. "We are delighted to have in Optum a partner that shares a common vision of creating a better future for health care for the people and communities we serve and see this combination as in the best interests of all of our stakeholders."

The agreement calls for the acquisition of Change Healthcare's common stock for $25.75 per share in cash and is expected to close in the second half of 2021, subject to Change Healthcare shareholders' approval, regulatory approvals and other customary closing conditions. Private equity funds affiliated with The Blackstone Group, which own approximately 20% of the common stock of Change Healthcare, have agreed to vote the shares they control in favor of the combination.

The acquisition is expected to be accretive to UnitedHealth Group's net and adjusted earnings per share by approximately $0.20 and $0.50 respectively in 2022, advancing strongly in subsequent years, inclusive of investments to accelerate technology, system and product integration and development activities to more quickly deliver the value of this combination to all health care system stakeholders. Adjusted earnings exclude from net earnings only the after-tax non-cash amortization expense pertaining to acquisition-related intangible assets.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

24.     On March 5, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

26. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27. Specifically, the Proxy Statement notes that the Company's management prepared a set of "Tax Attribute Projections" for purposes of the valuation analyses conducted by Goldman Sachs & Co. LLC ("Goldman Sachs"). However, the Proxy Statement fails to disclose the extent to which these projections are different from the "Net Impact to Cash Flows from Tax Attributes" discussed in the Proxy Statement.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion**

29. The Proxy Statement contains the financial analyses and opinion of Goldman Sachs concerning the Proposed Transaction, but fails to provide material information concerning such.

30. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) terminal value for the Company; (ii) the basis for Goldman Sachs' application of a range of perpetual growth rates of 1.25% to 2.25%; (iii) the basis for Goldman Sachs' application of the discount rate range of 6.75% to 7.75%; and (iv) the number of fully diluted shares of Change.

31. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for Goldman Sachs' selection of discount rate of 7.5%; (ii) the Company's net debt; and (iii) the number of filly diluted shares of Change.

32. With respect to Goldman Sachs' *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the Companies observed by Goldman Sachs.

33. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with

a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

35. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

36. The Proxy Statement contains information concerning the sales process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

37. Specifically, On December 28, 2020, UnitedHealth's counsel provided a draft letter agreement (the "TRA Letter Agreement") that it requested Change enter into with the parties to the TRAs. Between December 30, 2020 and January 4, 2020, counsel for UnitedHealth and Blackstone negotiated the terms of the TRA Letter Agreement. Concurrently with the negotiation of the TRA Letter Agreement, counsel for UnitedHealth and Blackstone negotiated a draft support agreement (the "Support Agreement"), which provided for a commitment and proxy by certain funds affiliated with Blackstone to vote all of their shares (approximately 20% of Change's outstanding shares) in favor of the Proposed Transaction. However, the Proxy Statement fails to disclose specific details of the payments Blackstone stands to receive under the TRA Letter Agreement.

38. Further, the Proxy Statement notes that in or around early December 2020, UnitedHealth expressed interest in speaking with Defendant Crescenzo about post-closing employment. However, the Proxy Statement fails to disclose whether any of UnitedHealth's

proposals or indications of interest, including UnitedHealth's October 19, 2020 and November 20, 2020 indications of interest, mentioned employment in the combined company.

39.  Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.  Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42.  Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Change within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Change, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 24, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*